## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS


**TERRY ROGERS,**

      **Plaintiff,**

**vs.**                                                    Case No. 18−cv−022−DRH

**JOHN BALDWIN,**
**JACQUELINE A. LASHBROOK,**
**STOUT,**
**LT. ENGELAGE,**
**HOWELL,**
**ADAMS,**
**FITZGERALD,**
**ASHTON,**
**DULANEY,**
**JOHN DOE #1,**
**JOHN DOE #2,**
**JOHN DOE #3,**
**JOHN DOE #4,**
**JOHN DOE #5,**
**JOHN DOE #6,**
**JOHN DOE #7,**
**JOHN DOE #8,**
**JOHN DOE #9,**
**JOHN DOE #10,**
**JOHN DOE #11,**
**JOHN DOE #12,**
**JOHN DOE #13,**
**JOHN DOE #14,**
**J. MOLENHOUR,**
**SHAYA,**
**REBA,**
**ELIZABETH,**
**RON, and**
**MOLDENHAUER**

      **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Terry Rogers, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 for events that happened at Lawrence Correctional Center and Menard Correctional Center. Plaintiff requests damages and injunctive relief in the form of a transfer out of Menard. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the

factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

Plaintiff was incarcerated at Lawrence Correctional Center on August 24, 2017. (Doc. 1, p. 6). Plaintiff got into an argument with C/O Stout over Plaintiff's personal property box. *Id.* Stout then opened Plaintiff's cell and pushed Plaintiff, causing him to fall and hit his head on the steel frame of his bed. (Doc. 1, p. 7). Plaintiff experienced dizziness and excruciating pain. *Id.* Stout then continued to assault Plaintiff by slamming him on the ground and punching him, causing injury. *Id.* Plaintiff caught his thumb on the ground when Stout slammed him; Plaintiff believes that Stout broke his thumb at that time. (Doc. 1, p. 8).

After reporting the assault and being examined in the health care unit, Plaintiff was transferred to Menard Correctional Center. (Doc. 1, pp. 9-10). Engelage, Howell, John Does #1-#3, and Fitzgerald met Plaintiff when he arrived. (Doc. 1, p. 10). Howell put handcuffs on Plaintiff so tightly that they caused excruciating pain and cut into Plaintiff's skin. *Id.* Plaintiff complained the handcuffs were too tight, at which point Howell, Fitzgerald, and John Does #1-3 all began beating Plaintiff. (Doc. 1, pp. 10-11). Engelage watched but failed to intervene. (Doc. 1, p. 11). Defendants told Plaintiff the beating was in retaliation

for what had happened at Lawrence, and Engelage promised Plaintiff "the shit treatment." (Doc. 1, pp. 11-12). Plaintiff requested medical attention for the beating and his shortness of breath (Plaintiff is asthmatic) from Howell and one of John Does #1-3, but they ignored him. (Doc. 1, pp. 12-13).

Plaintiff was placed in N2 cell 217. (Doc. 1, p. 12) Howell directed John Does # 4 and 5 to shut off the water in Plaintiff's cell, and they did. (Doc. 1, p. 13). Howell and one of John Does #1-3 returned to Plaintiff's cell and gave him a dirty wet mattress that had blood and urine stains on it and was infested with bugs. *Id.* Plaintiff requested a new mattress, along with bedding, toilet tissue, toothpaste, soap, deodorant and a towel, but Howell just told him that he was slow and didn't understand the shit treatment. (Doc. 1, pp. 13-14). Plaintiff continued to ask Ashston, Doe #6, Dulaney, Doe #7, Doe #8, Adams, Doe #10, and Doe #11 to remedy his conditions of confinement, but all of them refused. (Doc. 1, pp. 14-21). Ashton also refused to turn off Plaintiff's light on August 25, 2017. (Doc. 1, p. 15). Plaintiff alleges that he spent 5 days without water, and that he was forced to endure the smells from his toilet, which were exacerbated by the summer heat. (Doc. 1, pp. 23-24). The smells triggered Plaintiff's asthma, and he was also denied access to his inhaler during this time. *Id.* Plaintiff was moved to another cell on August 29, 2017. (Doc. 1, p. 23).

Ashston gave Plaintiff an empty food tray at breakfast on August 25, 2017. (Doc. 1, p. 15). Other C/Os, including Doe #6, Dulaney, Doe #7, Doe #8, Adams, Doe #10, Doe #11, also gave Plaintiff empty trays between August 25, 2017 and

August 27, 2017. (Doc. 1, pp. 16-21). Plaintiff was ultimately only fed on 2 occasions during a 5-day period. (Doc. 1, p. 24).

Plaintiff wrote Warden Lashbrook a letter detailing his need for medical treatment and reporting the assault on August 25, 2017. (Doc. 1, p. 17). He also wrote several sick call slips and 2 grievances. (Doc. 1, pp. 17-18).

Plaintiff repeatedly requested medical attention for his injuries, but Ashston, Doe #6, and Dulaney denied his requests. (Doc. 1, p. 14, 16-17). On August 26, 2017, Plaintiff requested medical care from Shaya while she passed out medication, and told her about his cell conditions. (Doc. 1, p. 19). Shaya looked at Doe #9, and he told Shaya not to help Plaintiff. (Doc. 1, p. 20). Plaintiff requested medical care from Reba on August 27, 2017 while she was passing out medication, but Doe #12 told Reba not to help Plaintiff and she walked away. (Doc. 1, p. 22). The same thing happened the next day on August 28, 2017 when Plaintiff asked Elizabeth for help, and John Doe #14 told her to refuse. (Doc. 1, p. 23).

Plaintiff was finally seen by N.P. Moldenhauer on August 31, 2017, but once Plaintiff alluded to the alleged assault, Moldenhauer refused to treat him. (Doc. 1, pp. 25-28). Plaintiff grieved this issue to Lashbrook. (Doc. 1, p. 28). Plaintiff waited 29 days for treatment before being seen by Ron. *Id.* Plaintiff told Ron about the alleged assault, at which point Ron stated "Oh, you won't be getting any Menard money," and then refused to continue treating Plaintiff. (Doc. 1, p. 29). Ron only provided ibuprofen. *Id.* Plaintiff saw Ron again on October 9, 2017, but

Ron once again refused to provide any treatment. (Doc. 1, p. 30). Plaintiff also saw Moldenhauer on October 12, 2017, and requested physical therapy for his thumb, but Moldenhauer only gave him more ibuprofen. (Doc. 1, pp. 30-31). Moldenhauer eventually ordered Naproxen and an x-ray. (Doc. 1, p. 31).

On October 21, 2017, Fitzgerald came to his cell and told Plaintiff that he got off lightly for a staff-assaulter, and that "since you want to whine and write grievances, and complain about it, I got something worse in store for you, don't think the cameras up here can save you, time for bed you piece of shit." (Doc. 1, p. 32). Fitzgerald then turned off Plaintiff's light. *Id.*

Plaintiff received a disciplinary report based on the altercation with Stout 76 days later written by J. Molenhour. (Doc. 1, pp. 33, 36). Plaintiff alleges that the disciplinary report was fabricated in retaliation for Plaintiff writing grievances. *Id.* It was ultimately dismissed for not being filed in a timely manner. *Id.*

Plaintiff requested that Lashbrook transfer him out of Menard, but she denied his request. (Doc. 1, p. 34). Likewise, Baldwin denied Plaintiff's grievances. *Id.*

**Discussion**

As an initial matter, Plaintiff has brought claims based on his incarceration at 2 separate institutions, Lawrence and Menard. The Seventh Circuit has warned the district courts repeatedly about permitting "scattershot" cases that include claims that cross different prisons to proceed without severance. *Owens v. Evans*, --F.3d --, 2017 WL 6728884 (7th Cir. 2017); *Owens v. Godinez*, 860

F.3d 434, 436 (7th Cir. 2017); *Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017)(failing to sever mis-joined claims prejudices the United States Treasury); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b)(g)). The Court has considered severance, but because Plaintiff has alleged that the chain of events at Menard was a direct and explicit response to the events at Lawrence, the Court finds the allegations here are transactionally related and that severance is inappropriate.

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 9 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1 –** Stout used excessive force on Plaintiff on August 24, 2017 when he beat him without penological reason in violation of the Eighth Amendment and the Illinois common law prohibition on assault and battery;

> **Count 2 –**Howell, John Does #1-#3, and Fitzgerald used excessive force when they cuffed Plaintiff too tightly and then beat him on August 24, 2017 in violation of the Eighth Amendment and the Illinois common law prohibition on assault and battery;

> **Count 3 –** Engelage failed to intervene in the use of excessive force when he observed Plaintiff being cuffed too tightly and beaten on August 24, 2017 in violation of the Eighth Amendment;

> **Count 4 –** Howell, Ashston, John Doe #6, Dulaney, Doe #7, Doe #8, Adams, Doe #10, and Doe #11, subjected Plaintiff to unconstitutional conditions of confinement in violation of the Eight Amendment between August 24 and August 29, 2017;

**Count 5 –** Ashston, Doe #6, Dulaney, Doe #7, Doe #8, Adams, Doe #10, and Doe #11, denied Plaintiff food between August 24 and August 29, 2017 in violation of the Eighth Amendment;

**Count 6** – Shaya, Reba, Ron, Elizabeth, Doe #6, Doe #8, Doe #9, Doe #10, Doe #12, Doe #13, Doe #14, and Moldenhauer were deliberately indifferent to Plaintiff's injuries as a result of the excessive force in violation of the Eighth Amendment;

**Count 7** – Lashbrook and Baldwin were deliberately indifferent to the serious risk of harm posed by the other defendants' campaign of harassment when they refused to transfer Plaintiff out of Menard after being made aware of his complaints through the grievance process in violation of the Eighth Amendment;

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review:

**Count 8 –** Shaya, Reba, Ron, Elizabeth, and Moldenhauer committed medical negligence when they refused to treat Plaintiff in violation of 705 ILCS 505/8(d);

**Count 9 –** Molenhour, Engelage, Howell, Adams, Fitzgerald, Ashston, Dulaney, and Does #1-14 retaliated against Plaintiff when they took adverse action to him in response to Plaintiff's complaints and grievances in violation of the First Amendment.

In **Counts 1 and 2**, Plaintiff makes claims against numerous defendants that they violated his Eighth Amendment right to be free from excessive force and his state common law right to be free from assault and battery. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and

sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). The factors relevant to this determination include: (1) the need for the application of force; (2) the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009); *Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Additionally, pursuant to Illinois state law, battery is defined as the unauthorized touching of another's person. *Welton v. Ambrose*, 814 N.E. 970, 979 (Ill. App. 4th Dist. 2004). It is clear that Plaintiff has articulated both an excessive force claim and a battery claim as to all Defendants listed in **Counts 1 and 2**. As to Plaintiff's claims arising out of Lawrence, he has alleged that Stout attacked him when he was neither threatening nor saying anything to Stout. This suggests that there was not a valid penological reason for Stout's actions and that

they were excessive. Plaintiff has also affirmatively stated that the touching was not authorized, as sufficient to state a state-law claim for battery.

The Menard claims are even more egregious. Plaintiff has alleged that he was handcuffed when the Defendants in **Count 2** began to beat him. Further, Plaintiff has alleged that Defendants specifically told him that they were beating him because of what had happened with Stout, and not for any authorized purpose. This clearly suggested that Defendants used unconstitutional force upon Plaintiff in violation of the Eighth Amendment. Plaintiff has also adequately stated a claim that the touching was not authorized. Plaintiff has adequately pleaded claims for excessive force and common law battery against the named Defendants in **Counts 1 and 2**.

Plaintiff's claim against Engelage in **Count 3** also survives threshold review. Under the Eighth Amendment, a correctional officer may be held liable for failing to intervene if he or she has a realistic opportunity to step forward and protect a plaintiff from another officer's excessive force, but fails to do so. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Plaintiff has alleged that Engelage was present and the commanding officer during the entire chain of events at Menard on August 24, 2017. Plaintiff has alleged that he begged Engelage to stop the others from striking him. It is a plausible reading of Plaintiff's allegations that Engelage had both the opportunity and the authority to stop the attack on Plaintiff, but failed to do so. **Count 3** shall therefore proceed against Engelage.

In **Count 4**, Plaintiff alleges that he was deprived of water and subjected to a cell with a dirty mattress for 5 days, and that various guards tormented him further during that time period by turning the lights on or off and denying him a shower. The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results "in the denial of 'the minimal civilized measure of life's necessities,'" and (2) where prison officials are deliberately indifferent to this state of affairs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Prisons must have adequate ventilation, sanitation, bedding, and hygiene products. *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987).

Prison officials demonstrate deliberate indifference when they "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn . . . and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff has alleged that he was deprived of water, one of life's necessities. That deprivation standing alone would be sufficient to state an Eighth Amendment claim, and the Court notes that Plaintiff has alleged that he experienced that condition in combination with others. Plaintiff has not only alleged that Defendants knew about the conditions of confinement at issue here, he has also alleged that they deliberately caused them. In fact, Plaintiff has alleged that some defendants began to act to alleviate some conditions until they spoke to other

guards about Plaintiff and changed their minds.   On these facts, Plaintiff has made a plausible allegation that he was subjected to unconstitutional conditions of confinement and that Defendants were deliberately indifferent to those conditions, so **Count 4** survives threshold review.

Plaintiff has also alleged that he was deliberately denied food, another one of life's necessities, during this same time period.   Correctional officials are obligated to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985), *cert. denied,* 479 U.S. 817, (1986) (quoting *Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir.1980), *cert. denied,* 450 U.S. 1041 (1981)). Withholding food is not a *per se* objective violation of the Constitution; courts must assess the amount and duration of the deprivation.   *Reed v. McBride,* 178 F.3d 849, 853 (7th Cir. 1999).

Here, Plaintiff has alleged that he was served 2 meals during a 5 day time period.   That is the type of denial that states a claim under the Eighth Amendment. *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (denial of food for 3 to 5 days at a time created a genuine issue of material fact as to an inmate's Eighth Amendment claim).   Therefore **Count 5** survives threshold review.

Plaintiff has alleged in **Count 6** that he repeatedly sought medical attention for the injuries he received during the beatings, only to have a series of Defendants deny him care based on their perception that Plaintiff had assaulted a

staff member. Prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Here Plaintiff has alleged that he was beaten to the point of unconsciousness twice in a short period of time, among other injuries. He has also alleged that the initial assault broke his thumb. The Court accepts at the

pleading stages that a potential concussion and a broken thumb constitute a serious medical need. Moreover, he has alleged that when he presented his symptoms to various officers and medical providers, they affirmatively refused to assist Plaintiff as part of the campaign of harassment that he was subjected to. This is an adequate statement of deliberate indifference, and **Count 6** will proceed.

Finally, as to **Count 7**, Plaintiff has alleged that he alerted Lashbrook and Baldwin to the campaign against him by writing grievances and letters detailing the beatings, improper conditions of confinement, lack of food and water, and lack of medical care. Despite being on notice of Plaintiff's allegations, Lashbrook would not agree to transfer Plaintiff out of Menard, and Baldwin condoned that decision. The inquiry here is whether Plaintiff had a sufficiently serious need that Baldwin and Lashbrook were deliberately indifferent to. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Court finds that Plaintiff has made a plausible allegation of deliberate indifference, and so **Count 7** will proceed against Lashbrook and Baldwin.

Plaintiff's remaining claims are problematic. Plaintiff also brings state law claims of "medical malpractice" against Shaya, Reba, Ron, Elizabeth, and Moldenhauer, based on the same conduct detailed above. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative

fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). While this Court has supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367, this is not the end of the matter.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2017). A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 I<small>LL</small>. C<small>OMP</small>. S<small>TAT</small>. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits or reports. Therefore, the claim in **Count 8** shall be dismissed. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required affidavit(s), if he desires to seek reinstatement of this claim. The certificate(s) of merit must also be filed, in accordance with the applicable section of §5/2-622(a). Should Plaintiff fail to timely file the required affidavits/certificates, the dismissal of **Count 8** may become a dismissal with prejudice. *See* Fed. R. Civ. P. 41(b).

Plaintiff's retaliation claim also must be dismissed at this time. To succeed on a First Amendment retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the

protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

In order to determine whether speech constitutes protected First Amendment activity, the Court employs the *Turner* test. In *Turner v. Safley*, the Supreme Court articulated the penological interest test: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The question is whether the speech at issue is consistent with legitimate penological objectives. *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009).

Plaintiff has made a generalized allegation of retaliation against several defendants, but for the reasons explained below, all of those claims fail. Plaintiff first alleges that Molenhour wrote him a disciplinary report 76 days after the incident with Stout, which suggests to Plaintiff that Molenhour wrote the report specifically in retaliation for the grievances Plaintiff had filed since the alleged beatings. However, Plaintiff has failed to allege that Molenhour specifically knew about the grievances. If Molenhour did not know that Plaintiff engaged in protected conduct, then he cannot have retaliated on that basis. But more to the point, Plaintiff has alleged that the disciplinary report was ultimately dismissed for procedural reasons. A dismissed disciplinary charge cannot serve as the basis for a § 1983 claim. *Bridges*, 557 F.3d at 555.

Plaintiff also alleges that Fitzgerald turned the light off in his cell on October 21, 2017 at 9:50 pm in retaliation for a grievance that Plaintiff filed.

Turning a light off at night on a single occasion is not a plausible allegation of behavior intended to deter grievance activity. A person of ordinary firmness would not be deterred by a single instance of turning the lights off during normal sleep hours. Plaintiff has not articulated a valid retaliation claim against Fitzgerald.

As to the other Defendants in this claim, Plaintiff has not specifically alleged that they knew about his grievance activity. Unless Defendants know that Plaintiff has engaged in protected conduct, they cannot be said to have engaged in unconstitutional retaliation. Plaintiff's general allegation of retaliation is also incompatible with many of his specific allegations. Plaintiff has alleged that many Defendants told him that they were treating him badly because he was perceived as a staff assaulter, or on the say-so of other guards or staff. If Defendants were retaliating against Plaintiff on those grounds, it would not implicate the First Amendment. The Court finds that Plaintiff's allegations of retaliation are too vague at this time. Plaintiff needs to tie the alleged acts of retaliation to specific instances of protected conduct. The Court will dismiss **Count 9** without prejudice to Plaintiff filing a proper Amended Complaint with more specific allegations regarding the protected conduct that drew the retaliation.

## Pending Motions

Plaintiff's Motion for Leave to Proceed IFP will be addressed by separate order. (Doc. 2). Plaintiff's Motion for Recruitment of Counsel and Motion for

Preliminary Injunction will be addressed by a United States Magistrate Judge with all due dispatch.  (Doc. 3) (Doc. 4).

<u>**Disposition**</u>

**IT IS HEREBY ORDERED** that **Counts 1-7** survive threshold review and shall proceed in this action.  **Counts 8 and 9** are **DISMISSED without prejudice**. Molenhour is **DISMISSED without prejudice**.  The Clerk of Court is directed to terminate the defendant listing for "John Doe" and replace it with "John Doe #1," "John Doe #2," "John Doe #3," "John Doe #4," "John Doe #5," "John Doe #6," "John Doe #7," "John Doe #8," "John Doe #9," "John Doe #10," "John Doe #11," "John Doe #12," "John Doe #13," and "John Doe #14.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the medical malpractice/negligence claim(s) in **Count 8** against Defendants Shaya, Reba, Ron, Elizabeth, and Moldenhauer and, Plaintiff shall file the required affidavit(s) pursuant to 735 Ill. Comp. Stat. §5/2-622, within 35 days of the date of this order (on or before February 16, 2018).  Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health professional, in compliance with §5/2-622.  Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of **Count 8** may become a dismissal **with prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants John Baldwin, Jacqueline A. Lashbrook, Stout, Engelage, Howell, Adams, Fitzgerald,

Ashston, Dulaney, Shaya, Reba, Elizabeth, Ron, and Moldenhauer : (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his

address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.01.12 11:39:35
-06'00'

**United States District Judge**