IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRY ROGERS, ) <br> #R-11363 ) <br>  Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOHN BALDWIN, *et al.*, ) <br> ) <br>  Defendant. ) | Case No. 18−cv−22−DWD |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on the Motions for Summary Judgment filed by Defendants Elizabeth Knop, Michael Moldenhauer, and Lashaya Donaby ("Nurse Shaya") (Doc. 134) and John Baldwin, Jacqueline Lashbrook, and Ron Skidmore (Doc. 136). Plaintiff has filed responses in opposition (Docs. 139-142). The Motions are **GRANTED IN PART.**

## Background

Following a review of the Complaint pursuant to 28 U.S.C. § 1915A and dismissal of the Doe defendants, Plaintiff proceeded on the following claims related to the present Motions:

> **Count 6** – Donaby, Reva Engelage, Skidmore, Knop, and Moldenhauer were deliberately indifferent to Plaintiff's injuries from excessive force in violation of the Eighth Amendment;[1] and

---

[1] Defendants Donaby, Knop and Skidmore were originally identified as "Shaya," "Elizabeth" and "Ron" by Plaintiff and in the Screening Order.

> **Count 7** – Lashbrook and Baldwin were deliberately indifferent to the serious risk of harm posed by the other defendants' campaign of harassment when they refused to transfer Plaintiff out of Menard after being made aware of his complaints through the grievance process in violation of the Eighth Amendment.

(Docs. 5, 75). Knop, Moldenhauer, Donaby and Skidmore move for summary judgment in their favor on Count 6, while Lashbrook and Baldwin seek dismissal of Count 7.

## Material Facts

As they relate to Counts 6 and 7, the pertinent material facts are as follows:

Plaintiff alleges that he was assaulted by staff while housed at Lawrence Correctional Center ("Lawrence") on August 24, 2017, and then transferred to Menard Correctional Center ("Menard") and assaulted again.

Plaintiff was seen by an intake nurse on August 24, who recorded a history of gastroesophageal reflux disease (GERD) and asthma. The nurse noted that he was taking two asthma medications (Xopenex and Alvesco) and three psychotropic medications, each due to expire on September 3, 2017. He was seen again later that day by Nurse Gregson, who ordered that he continue his medications and referred him to the Asthma Chronic Clinic and mental health. There is some disagreement as to whether Plaintiff had his asthma medication inhalers on this date, though Plaintiff testified that he was deprived of both medications for approximately 30 days after arrival at Menard and suffered asthma symptoms as a result. (Doc. 135-1, p. 15).

Medical records show that Defendant Donaby dispensed Plaintiff's psychiatric medications to him on August 25, 2017, while Defendant Knop did the same on August 28, 2017. Defendant Moldenhauer saw Plaintiff on August 31, 2017.

On September 25, 2017, Plaintiff was seen at sick call by Defendant Nurse Skidmore with complaints of headaches, dizziness, blurred vision and nausea due to recent head trauma. He also complained of pain in his right wrist and thumb. He was given ibuprofen and referred to the doctor for the head injury.

On October 12, 2017, Plaintiff was again seen by Moldenhauer. He complained of headache and right thumb numbness, as well as watery eyes and sinus pressure. Plaintiff was prescribed allergy medications, prescription-strength ibuprofen and Pepcid.

Plaintiff was seen against by Skidmore on November 7, 2017 for his thumb injury. Skidmore referred him for a doctor's consultation. Plaintiff was seen by Moldenhauer on November 12, 2017. Moldenhauer prescribed naproxen and ordered an x-ray. No fractures or dislocations were noted.

Moldenhauer saw Plaintiff again on March 1, 2018 for right thumb issues, with complains of numbness two to three times per day. Despite good range of motion and no edema, Moldenhauer referred Plaintiff's chart to the medical director for review and prescribed naproxen. Plaintiff was eventually referred to physical therapy.

During the course of these encounters, Plaintiff alleges that he wrote multiple letters to Warden Lashbrook and then-Director of IDOC Baldwin regarding his medical care and conditions of his confinement. (Doc. 135-1, pp. 17-18). He also alleges that he spoke directly with Lashbrook about his situation on one occasion when she was doing rounds. (*Id.*). Only one of these letters, mailed to Baldwin and dated October 3, 2017, is in the record. (Doc. 55-3, pp. 73-74).

Plaintiff also filed numerous grievances regarding his situation, some of which were appealed to the state Administrative Review Board ("ARB"). Baldwin states that he never reviewed Plaintiff's ARB submissions, instead delegating the responsibility of reviewing and confirming ARB decisions to a member of the ARB, who would sign his name. Similarly, Lashbrook states she reviewed one grievance submitted as an emergency (and agreed that it should be expedited), but otherwise delegated authority to Internal Affairs officers regarding review of staff misconduct and grievance officer reports. As a result, Baldwin and Lashbrook claim they were not aware of the contents of the grievances or their final disposition.

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party is entitled to summary judgment where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. When deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). However, if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

4

**Count 6**

In order to prevail on an Eighth Amendment claim for deliberate indifference to a medical condition, a plaintiff must show (1) that his condition was objectively, sufficiently serious and (2) that the prison officials acted with a sufficiently culpable state of mind. *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Foulker v. Outagamie County*, 394 F.3d 510, 512 (7th Cir. 2005). The second prong is satisfied by a showing that "the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

There are three distinct alleged serious medical needs: the cuts and bruises from his rough handling the day he was transferred, his asthma, and pain in his thumb and wrist. Defendants Moldenhauer, Donaby and Knop argue that the cuts and bruises were not sufficiently serious to satisfy the first element of the claim. Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim[.]" *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997). Small cuts, scrapes and bruises may be found too minor to qualify as objectively serious on summary judgment. See *Harper v. Stefonek*, No. 18-C-753, 2019 WL 2422882, at *6 (E.D. Wis. June 10, 2019), *Morrisette v. Boyd*, No. 16-3140, 2016 WL 4059185, at *3 (C.D. Ill. July 29, 2016), and *Williams v. Elyea*, 163 F. Supp. 2d 992, 998 (N.D. Ill. 2001). However, asthma "can be, and frequently is, a serious medical condition, depending on the severity of the attacks."

*Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005). Here, a doctor has diagnosed the condition and prescribed multiple medications to treat it. Plaintiff testified that he was deprived of these medications, and he suffered asthma attacks as a result. (Doc. 135-1, p. 15). This is sufficient to create a genuine issue of material fact for summary judgment. Similarly, untreated chronic pain can be a serious medical condition. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Plaintiff's testimony regarding ongoing hand pain and numbness is sufficient to defeat summary judgment on the issue of whether it was an objectively serious medical condition.

As to the "culpable state of mind" requirement, there are genuine issues of material fact as to whether Moldenhauer, Knop and Donaby were deliberate indifference regarding his asthma medication. Plaintiff testified that he told all three about his asthma situation and that all three failed to take steps to address the situation. (Doc. 135-1, pp. 23, 24 and 26). Donaby and Knop's counsel has submitted declarations that they do not recall Plaintiff informing them that he did not have his asthma inhalers and would "most likely would have written a note to the pharmacy to request his inhalers for him" if they had known. (Docs 135-3 and 135-4). However, these declarations are unsigned. Moreover, Plaintiff's testimony to the contrary creates a genuine issue of material fact on these issues. Donaby and Knop's statements are hypothetical assertions of what they would have done, and the absence of such actions is not sufficient to render the issue settled for summary judgment purposes. Knop and Donaby also claim that they did not have any spare inhalers with them during medication rounds and would not have the authority to give them out if they did. However, their unsigned declarations indicate that

6

they could have at least put in a note to request the inhalers for him, and the evidence shows that they did not. This fact could be interpreted by a jury two ways: either they were not aware of Plaintiff's alleged need, or they were and chose to ignore him. If the jury credited Plaintiff's testimony, the latter could be sufficient to support a claim for liability.

Plaintiff's remaining claim against Moldenhauer and the entirety of his claim against Skidmore[2] revolve around his ongoing thumb/wrist pain, and there the evidence shows no remaining issue of material fact. Both Moldenhauer and Skidmore provided treatment to Plaintiff for his hand issue. Skidmore provided pain medication and twice referred Plaintiff for a doctor's consultation. Moldenhauer provided physical examinations, referred him for testing and tried several different pain treatments. These are not situations where Plaintiff's condition was completely ignored, but instead where the treatments administered are alleged to be ineffective or insufficient. In such situations, "[a] plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment[;] that is, that no minimally competent professional would have so responded under those circumstances." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (*citing Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). Plaintiff presents no evidence that either Moldenhauer or Skidmore responded outside the bounds of accepted

---

[2] Plaintiff asserts in his Response that Skidmore was deliberately indifferent to Plaintiff's lack of asthma medication but provides no citations to evidence. Instead, the evidence presented shows that he saw Skidmore for head and hand issues. (See Doc. 142, p. 2). No evidence has been adduced to suggest Skidmore was aware of the alleged lack of inhalers.

7

professional judgment with regard to Plaintiff's hand injury. Accordingly, summary judgment will be granted on this claim.

### Count 7

An Eighth Amendment claim for failure to protect requires a plaintiff to demonstrate that he faced a substantial risk of serious harm, and that the defendants knew of and disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Where that risk involves inadequate medical care, the standard is the same as applied in Count 6.

Here, Plaintiff's claim is that he alerted Lashbrook and Baldwin to the assaults he had sustained, poor conditions of confinement and inadequate medical care, but they did nothing to address these situations. In Lashbrook's case, Plaintiff states that he spoke with her about his situation and the lack of medical care, wrote her multiple letters and submitted grievances. (Doc. 135, pp. 17-18). Plaintiff also states that he wrote multiple letters to Baldwin informing him that he feared for his life and asking for a transfer, as well as submitting denied grievances to the ARB. (*Id.*, pp. 17-18; Doc. 55-3, pp. 73-74). Neither Lashbrook nor Baldwin dispute the substantial risk of serious harm, attacking only the subjective element.

There remains a genuine issue of material fact as to whether Lashbrook and Baldwin had the requisite state of mind to support a deliberate indifference claim. Plaintiff testified regarding his in-person conversation with Lashbrook and the letters he wrote. Lashbrook does not deny these accounts, merely stating that she does not recall them. (Doc. 136-3). She instead points to her referral of the matter to Internal Affairs to

investigate the allegations of staff misconduct. Lashbrook is correct that if an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). However, her referral for a staff misconduct investigation does not dispose of the issue of whether his medication and conditions-of-confinement issues were adequately addressed. A finder of fact may determine that this was a reasonable response, or they may not.

The letters to Baldwin, however, are not sufficient to support a claim that he had knowledge of Plaintiff's specific situation. Baldwin's declaration states that he had not reviewed Plaintiff's surviving letter, and that letters addressed to him are routinely routed to the ARB for review. (Doc. 136-2, p. 2). Plaintiff provides no evidence that he ever saw the letters addressed to him. Accordingly, this cannot be a basis to support the deliberate indifference claim against Baldwin.

Finally, Lashbrook and Baldwin contend that they cannot be liable because they never reviewed the grievances (beyond Lashbrook marking one as an emergency) due to their routine practice of delegating such matters to other individuals. They are correct that to recover damages under Section 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right, and that there is no *respondeat superior* or vicarious liability for a constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). However, this does not insulate supervisory employees entirely. A supervisor may be liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either

9

knowingly or with deliberate, reckless indifference." *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 870 (7th Cir. 2011).

The Illinois Administrative Code provision dealing with grievances puts responsibility for making final determinations personally on the Chief Administrative Officer of the facility. 20 IL Admin Code § 504.830(e). Unlike other provisions of that regulation, no other individual may routinely perform these duties—only in periods of that individual's "temporary absence or in an emergency." 20 IL Admin Code § 504.805(b).[3] Despite this, Lashbrook states that she "routinely delegated the authority to review items such as Grievance Officer's Reports" and that in at least one instance here, someone "designated to sign on [her] behalf" signed one of the grievances which Plaintiff alleges would have put her on notice of Plaintiff's issues. (Doc. 136-3, pp. 1-2).

Similarly, the portion the Code provision dealing with appeal of grievances requires the Director to "review the findings and recommendations of the [Administrative Review] Board and make a final determination of the grievance[.]" 20 IL Admin Code § 504.850(e). Again, this is a function which may not be routinely delegated. 20 IL Admin Code § 504.805(b). Despite that, Baldwin's affidavit specifically states that he did not review the ARB responses in issue here, because "ARB members who issue responses to grievances had authority to sign [his] name on the responses and initial next to it." (Doc. 136-2, pp. 1-2).

---

[3] Other courts have reached the opposite conclusion— that final review and approval of grievance decisions is fully delegable. *Saleh v. Pfister*, No. 18 C 1812, 2021 WL 271233, at *2 (N.D. Ill. Jan. 27, 2021). With utmost respect, this interpretation is incorrect, as it would render 20 IL Admin Code § 504.805(b) a nullity.

10

It is true that failure to follow state administrative codes and regulations is not itself actionable as a constitutional violation. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). That said, the Court disagrees that the Seventh Circuit's determination in *Thompson* — that failure to abide by such regulations is "completely immaterial as to the question of whether a violation of the federal constitution has been established" — is applicable in this instance. *Id.* Lashbrook and Baldwin are by regulation placed in positions of authority where they are required to perform certain duties. A superior's delegation of authority to complete a task associated with those duties does not necessarily result in an effective renunciation of his responsibility to see that task is performed appropriately. See *Birch v. Jones*, No. 02 CV 2094, 2004 WL 2125416, at *7 (N.D. Ill. Sept. 22, 2004) (although the warden "may delegate [the responsibility to review inmate grievances] to others who sign his name for him, the buck still stops at the warden."); *Goodman v. Carter*, No. 00 C 0948, 2001 WL 755137, at *5 (N.D. Ill. Jul. 2, 2001) (holding that a warden "may not play a 'shell game,' delegating responsibility without disclosing to whom it is delegated, then denying personal responsibility when a prisoner seeks to hold him accountable"); *Drapes v. Hardy*, No. 14 C 9850, 2019 WL 1425733, at *6 (N.D. Ill. Mar. 29, 2019) (same). The intentional decision to hand off those responsibilities on a systematic basis bear directly on the question of whether they "turned a blind eye" for purposes of deliberate indifference. Without additional evidence, there remains a genuine issue of material fact.

Lashbrook also claims she cannot be liable because she was not the final decisionmaker on Plaintiff's requested relief (transfer to another facility). The fact that

11

Lashbrook could not unilaterally grant Plaintiff the transfer she requested does not absolve her from the claim that she did nothing at all to address the conditions of confinement or medical issues.

Finally, Lashbrook and Baldwin claim qualified immunity. Qualified immunity protects government officials from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Clark v. Walker*, 865 F.3d 544, 549–50 (7th Cir. 2017) (*quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The entitlement to qualified immunity depends on "(1) whether the facts, taken in the light most favorable to the plaintiff[ ], show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). "The latter inquiry is often dispositive and may be addressed first." *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019).

The rights at issue here have been long established. While the facts of every case are in some way unique, being housed in substandard conditions and being denied medication for a diagnosed illness are in no way unusual or distinguishable from countless other cases since *Farmer*. Accordingly, qualified immunity is unavailable in this situation for Lashbrook or Baldwin.

## Disposition

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendants' Motions for Summary Judgment (Docs. 134 and 136). Count 6 is **DISMISSED** as to Defendant Skidmore, and as to Plaintiff's claims against Donaby,

Knop and Moldenhauer for failure to treat his injuries. Count 6 survives against Donaby, Knop and Moldenhauer as to Plaintiff's denial of asthma medication. Count 7 survives. The Clerk of Court is **DIRECTED** to terminate Skidmore as a party in the CM/ECF system, and to enter judgment in his favor at the conclusion of the case.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Summary Judgment is such a hurdle, but it is a very low one for the Plaintiff to clear. Clearing the Summary Judgment hurdle does not mean that the Plaintiff has won his case nor does it mean that he is entitled to damages or other relief. As noted above, clearing the summary judgment hurdle only requires the existence of a disputed fact material to the Plaintiff's claim. At trial, he will need to *prove* that the disputed fact did, in fact, occur as the Plaintiff says it occurred. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.

**IT IS SO ORDERED.**

**DATED:  September 24, 2021**

_____
David W. Dugan
United States District Judge